Williamson v. Sykes.

## WILLIAMSON *vs.* SYKES.

After a decree *pro confesso*, order of reference, and report of master, the decree will be opened, and the defendant let in to answer, if the equity of the case requires such relaxation of the rules of the court.

*Dudley* and *Beasley*, for complainant.

*Stratton* and *Vroom*, for defendants.

THE CHANCELLOR. The exception taken to the master's report in this cause is not sustained. There is nothing in the cause to warrant the claim of commissions on the part of the defendant. The bill charges that the whole amount claimed upon the contract is due. No answer has been filed. The bill is taken as confessed. All the claims made by way of set-off were admitted and allowed by the master. So far as the evidence in this case is concerned, the complainant is entitled to have the master's report confirmed and to a final decree.

Since the report was filed George Sykes, the defendant, on the twelfth day of November, 1860, filed his bill of complaint, praying that the contract upon which the original suit by Williamson was founded may be reformed; that a general account may be taken of the dealings and transactions between the parties in interest; that the proceedings in the suit by Williamson may be stayed, and that he may have such relief as he may be entitled to in equity. Aside from all technical questions which may arise as to the character and frame of this bill, and the time of exhibiting it, which it would be irrelevant and improper now to anticipate, the fact material to the present inquiry which it discloses is, that at the time of the contract made by Sykes, which Williamson is now seeking to enforce, there was due from the *cestui que trust* of Williamson to Sykes certain moneys, which by agreement were to be deducted from the amount specified in the contract to be accounted for by Sykes. This fact is verified not only by the statement of the bill but also by the affidavit of the counsel, by whom the contract was drawn and who is the witness of its execution. Assuming the fact thus verified to be true, it seems clear that the report of the master is for a larger sum than Williamson is entitled *ex æquo et bono* to recover, and that in equity

Sykes is entitled to have an account taken of the amount justly due.

The only question then is, has Sykes, by *laches* on his part, or by misconduct as a trustee, forfeited his right to an investigation of the account and to an allowance of his claims against the estate. Shall he now be admitted to a defence—and if so upon what terms. This renders necessary a recurrence to the leading facts in the history of the controversy, which fortunately are not disputed.

In May, 1824, Anthony S. Earl, of the county of Burlington, died intestate, seized and possessed of considerable personal and real estate. He left surviving a son and a daughter, Mark. Anthony Earl and Virginia E. Earl, his heirs at law. In August, 1834, George Sykes was appointed and acted alone as the guardian of the person and estate of the son, Mark Anthony Earl. In February, 1835, he was appointed, with Taunton Earl, guardian of the person and estate of the daughter, Virginia E. Earl. No account of either guardianship has ever been settled.

On the twenty-seventh of August, 1847, Mark Anthony Earl, one of the children, died, after he had attained his majority, leaving his sister Virginia his heir at law. At the time of his death he was seized of considerable real estate, which he inherited from his father, and which thereupon vested in his sister as his heir at law. It is also claimed that at the time of his death he was largely indebted to Sykes, partly for money advanced by him as guardian during his minority, and partly for advances made after he was of age. These advances are claimed to have constituted by contract a claim upon the sister's interest in the land of which Mark Anthony Earl died seized.

After the death of her brother, on the twenty-seventh of September, 1848, Virginia E. Earl, having intermarried with Jacob R. Taylor, gave to Sykes a letter of attorney empowering him to sell certain real estate which had descended from her father to her brother and herself, and

which upon her brother's death vested in her. The real estate was sold by virtue of that power for $6500, of which $3000 was received by Sykes on the thirtieth of March, 1850, and the balance, amounting with interest to $4082.50, was received by him on or before the first of July, 1853. For that balance this suit was instituted.

On the eleventh of September, 1850, after the receipt by Sykes of $3000 on account of the sale of the land, a settlement was made or attempted between Virginia, the ward, and her husband, of the one part, and Sykes and Taunton Earl, as her guardians, of the other, and the instrument was executed by Sykes and Earl which forms the subject of the present controversy. After reciting the fact of the settlement with the guardians and their discharge from their guardianship, the instrument is as follows :

"Now we, the said George Sykes and Taunton Earl, do hereby acknowledge that there is due to the joint estate of the said Virginia E. Taylor and her brother, the late Mark Anthony Earl, deceased, the sum of $3500 from Thomas P. Barkalow, for which we hold proper vouchers and securities, and we do hereby covenant and agree to and with the said Jacob R. Taylor and wife to account to them for their legal interest in said sum, whenever the same shall be collected, anything in the said acquittance or discharge to the contrary thereof in anywise notwithstanding."

Sykes now claims that notwithstanding that settlement with his ward and his discharge from his guardianship, and consequent release of his sureties, he still has unsettled claims against his ward for moneys advanced while guardian and for commissions as guardian. He also claims that there are debts due him from Mark Anthony Earl's estate which are a legal lien upon this estate in the hands of the sister.

After this contract was executed, Taylor and wife conveyed all their interest in her estate to Thomas William-

Q*

son, to hold in trust for the wife. The wife has since died, leaving an infant son entitled to the estate. The bill was filed by Williamson, as trustee for the infant, to compel the payment by Sykes of the money due upon his contract. Prior to the filing of the bill, and on or before the first of July, 1853, Sykes had received the whole of the purchase money, amounting with interest to $4082.50, which he covenanted to account for whenever received. He has made no settlement of the estate of Mark Anthony Earl. He has exhibited no account of his claim against Virginia.

The bill in this cause was filed on the seventh of July, 1858, and the subpœna made returnable on the nineteenth of that month. On the tenth of September, he obtained sixty days further time to answer. Four months passed, and no answer was filed. On the fourth of February, 1859, he was again ordered to answer. The court closed before the time for answering expired. More than a year elapsed : the defendant availed himself of the delay, and filed no answer. Upon the opening of the court he was again ordered to answer. He refused or neglected to comply. On the sixteenth of April, 1860, a decree *pro confesso* was made, and the matter referred to a master to take proofs.

On the thirtieth of July, 1860, after the complainant had offered his evidence before the master, the defendant asked to open the decree and for leave to answer. Even then the facts now relied on as a ground of equitable relief were not brought to the notice of the court. On the thirtieth of November, 1860, when the complainant's case was about to be brought to final hearing, Sykes exhibits his bill, already referred to, to reform the contract of 1850, and now asks that proceedings in the original cause be stayed until the questions involved in this new suit be disposed of and determined.

I have given thus in detail a history of this transaction, as stated by Mr. Sykes himself and as proven by the re-

cords of this court, and it exhibits a case of such extreme persistent breach of duty on the part of a trustee towards those whose estate he has in his hands as would fully justify the court in refusing to grant him any relief. It is not necessary to impute intentional fraud. It is enough to see there has been a breach of duty to his *cestui que trusts* and a persistent refusal to make the very settlements which he now asks to make.

This neglect may to some extent be susceptible of explanation, and upon the facts, as they now appear, the report of the master is for a larger amount than is equitably due. I am disposed, therefore, to admit the defence; but it must be done in such manner and upon such terms as will, as far as possible, guard the rights of the infant *cestui que trust* and avoid unnecessary delay. There is, in my judgment, no necessity for this bill to reform the contract. The whole controversy may be settled in the original cause if the defendant will consent to answer and exhibit his accounts. At any rate the defendant may fully protect himself by his answer. As the bill to reform the contract is framed it is obvious that great delay must intervene before the controversy can be settled. That question meets us in *limine* before any account can be taken.

I shall direct the master's report and decree *pro confesso* to be opened, and the defendant permitted to answer upon the following terms, *viz.* that on taxation and demand the costs that shall have been incurred by the complainant since and including the first order requiring him to answer be paid; that he file his answer to the complainant's bill, together with his accounts touching the matter in controversy, within thirty days from this date, and that within the same time he give to the complainant a bond with sufficient security, to be approved by one of the masters of this court or by the Chancellor, with condition that he will faithfully account for the trust funds in his hands, and that he will pay to the complainant or to his

*cestui que trust* the amount which shall eventually be de-creed against him.

The last condition is annexed as a matter of obvious justice. The defendant is here · asking a favor. The whole difficulty and delay have been occasioned by his own acts and breach of duty. The further protraction of the controversy may end in a total loss of the claim, and the least that can be done is to afford such protection to her interests as shall prevent any decree that may be made in her favor from proving nugatory.